**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JEFFREY P. RHOADS, M.D.,      )
            )
           Plaintiff,      )
            )
v.            )      Case No. 22-4005-JWB-ADM
            )
STORMONT VAIL HEALTHCARE, INC.,  )
            )
           Defendant.      )
            )

## AMENDED COMPLAINT

The plaintiff, Jeffrey P. Rhoads, M.D., states and alleges the following claims for relief against the defendant, Stormont Vail Healthcare, Inc.

## JURISDICTION AND VENUE

1.     This is an employment case based upon and arising under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §§ 12101, et seq; the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §§ 701, et seq.; and the common law of Kansas.

2.     This court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1331, since these claims arise under federal statutory law. These claims were included in timely administrative charges filed with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued right-to-sue letter to the plaintiff regarding these claims, and this action was filed within 90 days after receipt of the right-to-sue letters.

3.      This court has supplemental jurisdiction over the plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, since the state-law claims are so related to the federal claims that they form part of the same case or controversy.

4.      All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b)-(c).

## PARTIES

5.      The plaintiff, Jeffrey P. Rhoads, M.D., is a physician licensed by the State of Kansas, and he is 66 years old.

6.      The defendant, Stormont Vail Healthcare, Inc. ("SVH") is a corporation which is based in Topeka, Kansas, and which provides health care services.  SVH employs more than 250 physicians, plus many more allied health care providers. Accordingly, SVH is an "employer" as defined in the ADA.

7.      SVH is principally engaged in the business of providing health care, and it operates a program or activity which receives federal financial assistance, specifically, Medicare and Medicaid payments.  Consequently, SVH is subject to the provisions of the Rehabilitation Act of 1973.

## FACTUAL ALLEGATIONS

8.      In April of 2011, Dr. Rhoads was hired by SVH to provide health care services as a Hospitalist.  This employment relationship was governed by a written contract, called an Established Physician Employment Agreement ("Employment Agreement"), which was revised periodically.    The most recent version of this

Employment Agreement has an effective date of October 1, 2019, and it states in relevant part:

> 5.1 <u>Term</u>. The Term of this Agreement will begin on the Effective Date and will continue for an indefinite period until termination pursuant to Section 5.2 below.
>
> 5.2 <u>Termination</u>.
>
> . . . .
>
> D. <u>Death or Disability</u>. . . . This Agreement will also terminate if Physician becomes unable to perform the essential functions of his or her employment in the specialty for which Physician was employed, and no reasonable accommodation can be made that would allow Physician to perform the essential functions of his or her employment. . . . <u>SVH will explore all reasonable accommodations, including possible reassignment, for a Physician with a disability</u>. However, this Agreement will terminate if reassignment is necessary, and the terms and conditions of continued employment, if any, will be determined at the time of reassignment.

Emphasis added.

9.     Pursuant to his Employment Agreement, Dr. Rhoads was typically scheduled to work 7 shifts on duty at Stormont Vail Hospital, followed by 7 shifts off duty. A shift is defined in the Employment Agreement as greater than 8 hours and less than 14 hours.

10.     From September 23 to 30, 2020, Dr. Rhoads worked his typical 7-day shift at Stormont Vail Hospital, plus an additional 1-day shift. During this time period (and for the previous 6 months), Dr. Rhoads treated a number of patients with COVID-19.

11.     On October 2, 2020, Dr. Rhoads himself began experiencing symptoms consistent with COVID-19. On October 5, 2020, Dr. Rhoads tested positive for COVID-19, resulting in his hospitalization at Stormont Vail Hospital from October 5 to 11, 2020.

12.     After quarantining for 11 days, Dr. Rhoads worked a 5-day shift at Stormont Vail Hospital from October 23 to 27, 2020.  Dr. Rhoads then worked three straight 7-day shifts from November 4 to 24, 2020.  Thereafter, he was scheduled to work another 7-day shift from December 2 to 8, 2020.

13.     However, on December 1, 2020, Dr. Rhoads was summoned to a meeting with Dr. Kimberly Brey, M.D., who is the Medical Staff President of SVH.  Karen Reed-Coffman, who is the Director of the Medical Staff Office of SVH, also attended this meeting.  Dr. Brey informed Dr. Rhoads that certain "concerns" had been expressed about his executive function, and that SVH was taking him out of service, pending the results of a medical examination.  Dr. Brey did not elaborate on the nature, or the sources, of the "concerns" about Dr. Rhoads' executive function.  Dr. Brey further informed Dr. Rhoads that SVH had contract with Acumen Assessments, Inc. ("Acumen"), to conduct his medical examination.

14.     Acumen could not schedule Dr. Rhoads' medical examination until the first week of January, 2021.  SVH paid Dr. Rhoads his full base salary from December 1 to 31, 2020.

15.     From January 4 to 7, 2021, a team composed of psychologists and a psychiatrist at Acumen conducted a medical examination of Dr. Rhoads to evaluate his neurocognitive fitness to practice medicine. This examination included neuropsychology testing which was split over two days. During this examination, Dr. Rhoads questioned whether his current neuropsychological status might be caused by his recent infection of COVID-19.

16.     On January 8, 2021, Acumen submitted a preliminary report of its evaluation of Dr. Rhoads to Dr. Brey and to SVH's Physicians Health and Advocacy Subcommittee of the Medical Executive Committee.  Acumen's written report, based on DSM-V criteria, diagnosed Dr. Rhoads with mild neurocognitive disorder, without behavioral disturbance.  Acumen's written report further stated that, in the opinion of the evaluation team, "Dr. Rhoads cannot be considered fit to practice at this time." Acumen's written report also recommended that "Dr. Rhoads seek additional neurological evaluation (with neurological examination and extensive imaging studies) to assess for potential structural or functional causes of his neuropsychological deficits."

17.     Later in the day on January 8, 2021, Dr. Brey called Dr. Rhoads on the telephone, and advised him of Acumen's preliminary report. Dr. Brey further advised Dr. Rhoads to apply for a leave of absence from SVH's Medical Staff for health reasons.

18.     On January 12, 2021, Dr. Rhoads applied for 12 weeks of leave from his employment under the Family and Medical Leave Act ("FMLA"), to commence on January 11, 2021.  SVH eventually granted Dr. Rhoads' application for FMLA leave, which began on January 11, 2021, and ended on April 2, 2021.  During the first 30 days of his FMLA leave, SVH paid Dr. Rhoads his full base salary; during the remainder of his FMLA leave, SVH paid Dr. Rhoads 50% of his base salary.

19.     On January 26, 2021, Dr. Rhoads sought treatment for his medical condition at the University of Kansas Hospital in Kansas City, Kansas ("KU Hospital"). On January 26, Dr. Rhoads underwent a FDG PET brain scan, conducted by Dr. Wendall Yap, M.D., a neuroradiologist.  Dr. Yap interpreted the results of the PET scan as compatible with Lewy body disease.

20.    On February 3, 2021, Dr. Rhoads emailed a request for a leave of absence from SVH's Medical Staff for health reasons, addressed to Dr. Brey and Dr. Robert Kenagy, M.D., who is the President and Chief Executive Officer of SVH.  This request stated:

> I would like to request an extension of my leave of absence from the SVH Medical Staff effective, January 11, 2011 for up to one year for health reasons.  Prior to my return, I will provide a 30-day written notice of my intent to return from my leave of absence. My written notice will include a written report from my personal physician indicating that I am capable of resuming hospital and/or other activities.

On February 4, 2021, Dr. Kenagy approved Dr. Rhoads' request for a leave of absence from SVH's Medical Staff "for up to a year."

21.    On February 8, 2021, Dr. Rhoads was evaluated by Dr. Ryan Townley, M.D., a neurologist at the Memory Care Clinic at the KU Hospital.  Dr. Ryan reviewed the PET scan of Dr. Rhoads, and he agreed with Dr. Yap's interpretation that the results of the scan were compatible with Lewy body disease.  However, in his progress notes, Dr. Townley went on to state in relevant part:

> In my mind, it is entirely possible that the Covid infection unmasked an underlying neurodegenerative disease. However, if we did not have the FDG PET scan results, I am not sure we would be entertaining the idea of Lewy body disease at this point.  The reason being, that he does not have any of the classic clinical features of Lewy body disease.

22.    Also during his evaluation of Dr. Rhoads on February 8, 2021, Dr. Townley discussed the possible use of donepezil medicine with Dr. Rhoads.  In his progress notes, Dr. Townley stated in relevant part:

> A [PET] scan does not a diagnose make.  We discussed that if he responds well to the donepezil medicine, like I think he

will, we may be in a position 3 months from now where they will question if his cognitive improvement is secondary to recovery from long-hauler COVID syndrome, or if it is because of the donepezil. Therefore, the most scientific way to move forward is to hold the donepezil for the time being. If he continues to improve without that medication then we will have to reevaluate things. If this is Lewy body disease, his cognitive symptoms will worsen over time and should become apparent to his wife and other family members.

23.     Also during his evaluation of Dr. Rhoads on February 8, 2021, Dr. Townley recommended that there be a repeat neuropsychological testing of Dr. Rhoads at the KU Hospital. On February 23, 2021, this repeat neurological testing of Dr. Rhoads was conducted by Dr. Adam Parks, Ph.D., a neuropsychologist at the KU Hospital. In his progress notes, Dr. Parks summarized, in relevant part, his interpretation of the results of his neurological testing of Dr. Rhoads as follows:

Compared to the testing in 01/2021 [by Acumen], he has slightly improved across several domains, including memory. Possible explanations for this could be his more consistent CPAP use, continued recovery from COVID-19 (concern for 'long-hauler syndrome'), and possible practice effects given how recent the prior testing was performed. . . . Overall, his presentation is consistent with Mild Cognitive Impairment (MCI). Continued monitoring is warranted.

24.     In his progress notes of February 23, 2021, Dr. Parks also addressed Dr. Rhoads' return to work, stating:

He is certainly motivated to return to work. Based on the mild cognitive impairment shown on testing, he would likely have difficulty returning to the level of work prior to his leave of absence. With proper accommodation, he could likely perform in a position with fewer demands and additional oversight. Ultimately, the decision to return to work is deferred to his treating providers and his employer.

Emphasis added.

25.     On February 26, 2021, Dr. Townley reviewed the results of Dr. Parks' neurological testing of Dr. Rhoads.  In his progress notes, Dr. Townley first stated, "I reviewed these results in detail and agree with Dr. Parks' interpretation."  Dr. Townley then went on to address the question of Dr. Rhoads' return to work, opining:

> Can patients with mild cognitive impairment still work, even at high cognitive demanding jobs, such as a physician? Yes. I have a number of my patients with mild cognitive impairment still working, including a physician and a veterinarian. However, this is in the setting of them responding well to the above medication (donepezil) and then taking a reduced work load with some accommodations to allow for more time given the slower processing speed and executive function issues. He should not return to work full time and should see how things go over time.  His work schedule should be transparent about any issues they are noticing and help as needed to support him unless there are errors occurring that are not amendable to support accommodations.

26.     On or about February 24, 2021, Dr. Rhoads signed a records release form, authorizing the KU Hospital to release all of his medical records to SVH.  On March 1, 2021, Dr. Rhoads advised Dr. Brey that he had linked his medical records at the KU Hospital to his medical records at SVH, in order to allow SVH to view his information from KU.

27.     On April 5, 2021, Dr. Rhoads received a telephone call from Dr. Kevin Dishman, M.D., who is the Senior Vice President and Chief Medical Officer of SVH. During this call, Dr. Dishman reminded Dr. Rhoads that his FMLA protection had expired.  In addition, Dr. Dishman also told Dr. Rhoads that he would have to apply for any future job with SVH like any other outsider, explaining:  "Your rights are no more than the rights of a man on the street."

28.     On April 13, 2021, Dr. Peter Graham, Ph.D., who is the Co-Director of Acumen, emailed a letter to Dr. Brey and Ms. Reed-Coffman regarding Dr. Rhoads. This letter stated in relevant part:

> We concur with Dr. Parks' recommendations in his report of February 23, 2021.  Given the neurological diagnosis, <u>we would recommend that the 'treating providers' who should offer an opinion at this time regarding Dr. Rhoads' potential return to work</u>, and any potential accommodations, oversight, and lessened workload/demand (in an outpatient setting) <u>should be his treating neurologist and neuropsychologist</u>.

Emphasis added.

29.     On April 14, 2021, Dr. Townley received a telephone call from Dr. Brey regarding Dr. Rhoads' potential return to work.  In his progress notes, Dr. Townley summarized this telephone call in relevant part as follows:

> He has been on donepezil medicine now for over a month and is reportedly doing well with that per the conversations that he has with Dr. [Brey] on a weekly basis. . . .  As we discussed, the attention and encoding of information can be dramatically helped in Lewy body disease with donepezil and if he is responding well, <u>a return to outpatient medicine with oversight/accom[modations] makes sense</u>.  Either working closely with a nurse practitioner/PA and/or someone overseeing documentation/treatment plans to make sure he is performing well would be recommended.

Emphasis added.

30.     On May 10, 2021, Dr. Rhoads was evaluated by Lindsey Gillen, APRN-NP, a nurse practitioner at the Memory Clinic at the KU Hospital.  Ms. Gillen's evaluation was a follow-up to the evaluation of Dr. Rhoads conducted by Dr. Townley on February 8, 2021.  In her progress notes, Ms. Gillen summarized the Memory Clinic's diagnosis of Dr. Rhoads, in relevant part, as follows:

> He is tolerating the donepezil, and remains with a diagnosis of Mild Cognitive Impairment.  Though he continues to have some very mild motor symptoms, as previous evaluations and neuropsychology testing at this facility have stated, he does NOT meet the criteria for dementia.  A key component to the diagnosis of Lewy Body Disease is a diagnosis of a dementia syndrome.  <u>Our recommendation is that he can return to work with an average workday of approx. 8 hrs per day, no more than 5 days per week</u>.  A process of evaluation should be in place to follow and evaluate his work performance.

Emphasis added.

31.    On May 21, 2021, Dr. Rhoads sent a text message to Dr. Dishman, stating in relevant part:

> Kevin I am ready, willing and able to return to work.  You promised that by the end of this week you would have a suitable position available.  KU and Acumen have both tested, analyzed, and made recommendations to that end.
>
> I have willfully and graciously subjected myself to SVH requests in order to obtain these recommendations.  I did not agree to . . . subject myself to further testing yesterday and agree with both KU and Acumen that at this juncture additional testing would be redundant.
>
> Be the leader that I know you to be.  'Put me in coach, I am ready to play!'

32.    On May 26, 2021, Dr. Rhoads received an email from Kevin Steck, who is the Senior Vice President, General Counsel, and Chief Compliance Officer of SVH.  In this email, Mr. Steck directed Dr. Rhoads, as a condition of continued employment with SVH, to immediately contact Acumen for a second follow-up fitness-for-duty evaluation.  Mr. Steck further warned Dr. Rhoads that "[f]ailure to comply with the instructions set forth herein will likely result in your separation from employment."

33.     On May 27, 2021, Dr. Rhoads' attorney responded by email to Mr. Steck, stating that Mr. Steck's direction to Dr. Rhoads to submit to a second fitness-for-duty evaluation by Acumen was contrary to the letter of April 13, 2021, from Dr Graham to SVH.  In his letter of April 13, Dr. Graham had recommended that Dr. Rhoads' "treating providers . . . should offer an opinion at this time regarding Dr. Rhoads' potential return to work, and any potential accommodations."  Dr. Rhoads' attorney further pointed out that on May 10, 2021, one of Dr. Rhoads' treating providers at the KU Hospital, Ms. Gillen, had evaluated Dr. Rhoads and concluded: "Our recommendation is that he can return to work with an average workday of approx. 8 hrs. per day, no more than 5 days per week."

34.     Following the email of May 27, 2021, from Dr. Rhoads' attorney to Mr. Steck, the parties (through their respective attorneys) continued to engage in the interactive process required by the ADA to explore possible reassignment of Dr. Rhoads to a position at SVH other than as a Hospitalist.  During this interactive process, Dr. Rhoads requested that he be assigned to either:  (a) an administrative position which would not require direct patient care; or (b) a position as a provider of outpatient/primary care.  By the end of June of 2021, SVH had not offered Dr. Rhoads reassignment to any position.

35.     On July 1, 2021, Dr. Rhoads filed an administrative charge against SVH with the Kansas Human Rights Commission ("KHRC"), which was cross-filed with the EEOC.  In his administrative charge, Dr. Rhoads asserted that SVH had discriminated against him because of his disability, and further that SVH had retaliated against him for engaging in protected activities.

36.     On September 15, 2021, Dr. Rhoads and SVH engaged in a mediation session as a part of the KHRC proceedings.  The parties were not able to resolve Dr. Rhoads' administrative charges against SVH through this mediation.

37.     On October 9, 2021, Dr. Rhoads received a letter through the mail from Dr. Kenagy.  This letter, which was dated August 26, 2021, stated in relevant part:

> On behalf of Stormont Vail Health Governing Board, I wish to inform you that your request to resign from the Medical Staff effective 08/31/2021 has been accepted.

This statement is pretextual because Dr. Rhoads never requested to resign from SVH's Medical Staff.

38.     On October 12, 2021, Dr. Rhoads' attorney sent an email to one of SVH's attorneys, stating:  "Please advise Dr. Kenagy that Dr. Rhoads has never requested to resign from the Medical Staff on 8/31/21, or on any other date."

39.     On October 13, 2021, one of SVH's attorneys emailed a letter to Dr. Rhoads' attorney, stating in part:

> . . . Dr. Rhoads has not been in compliance with the terms of his employment contract for some time going back to April 2021.  Paragraph 1.2.C. requires Dr. Rhoads to retain 'medical staff membership and clinical privileges' throughout his employment.  As you know, Dr. Rhoads was granted a leave of absence in February, 2021.  Yet, when it came time for Dr. Rhoads to renew his credentials/privileges in mid-summer, he did not so renew.

This contention is pretextual because SVH never advised Dr. Rhoads that he needed to renew his medical staff credentials/privileges while he was on approved leave for health reasons.

40.     The letter of October 13, 2021, further stated:

> Additionally, paragraph 2.1 of the employment contract requires Dr. Rhoads to 'provide full-time professional medical services consistent with [his] specialty.' Dr. Rhoads has not provided such professional services for almost a year now. Paragraph 2.4 requires Dr. Rhoads to participate in on-call and other coverage schedules as determined by SVH. Dr. Rhoads has not been available for such coverage for nearly a year. This is not a complete list of contractual terms Dr. Rhoads is not in compliance with. Accordingly, Dr. Rhoads is in material breach of his employment contract with SVH.

This contention is pretextual because SVH refused to reasonably accommodate Dr. Rhoads by reassigning him to another position other than Hospitalist.

41.     The letter of October 13, 2021, concluded:

> Therefore, SVH has decided it is appropriate to provide notice of Dr. Rhoads' employment termination retroactively effective to September 15, 2021, subject to the cure period of ten (10) business days from the date of this correspondence to October 26, 2021.

### COUNT I:  UNLAWFUL FAILURE TO ACCOMMODATE

42.     All of the above paragraphs are incorporated into Count I by reference.

43.     Dr. Rhoads is disabled within the meaning of the ADA and the RA because he has a physical impairment which substantially limits several of his major life activities. In addition, Dr. Rhoads was able to perform the essential functions of his job as a physician, with reasonable accommodations.

44.     In violation of the ADA and the RA, SVH discriminated against Dr. Rhoads because of his disability by failing to grant his request for a reasonable accommodation, specifically, reassignment to either:  (a) an administrative position which would not require direct patient care; or (b) a position as a provider of outpatient/primary care.

45.     As a result of SVH's intentional failure to reasonably accommodate Dr. Rhoads, he has suffered damages in the form of loss of past and future compensation and benefits, emotional distress, mental anguish, and loss of enjoyment of life.

46.     By failing to reasonably accommodate Dr. Rhoads, SVH acted with malice or with reckless indifference to Dr. Rhoads' federally protected rights.  Therefore, SVH is liable for punitive damages under the ADA.

WHEREFORE, Dr. Rhoads prays for judgment against SVH in excess of $1,000,000.00, consisting of loss of past and future compensation and benefits, emotional distress, mental anguish, loss of enjoyment of life, punitive damages, attorney fees, litigation expenses, prejudgment interest, and such other relief the court deems just and proper.

## COUNT II:  UNLAWFUL RETALIATION

47.     All of the above paragraphs are incorporated into Count II by reference.

48.     Dr. Rhoads engaged in activity protected by the ADA and the RA by requesting SVH to grant a reasonable accommodation for his disability, and by filing an administrative charge against SVH with the KHRC.

49.     In violation of the ADA and the RA, SVH retaliated against Dr. Rhoads for engaging in protected activity, specifically, by failing to grant Dr. Rhoads' continuing requests for a reasonable accommodation, and by terminating his employment.

50.     As a result of SVH's intentional retaliation against Dr. Rhoads, he has suffered damages in the form of loss of past and future compensation and benefits, emotional distress, mental anguish, and loss of enjoyment of life.

51.    By retaliating against Dr. Rhoads, SVH acted with malice or with reckless indifference to Dr. Rhoads' federally protected rights.   Therefore, SVH is liable for punitive damages under the ADA.

WHEREFORE, Dr. Rhoads prays for judgment against SVH in excess of $1,000,000.00, consisting of loss of past and future compensation and benefits, emotional distress, mental anguish, loss of enjoyment of life, punitive damages, attorney fees, litigation expenses, prejudgment interest, and such other relief the court deems just and proper.

### COUNT III:  UNLAWFUL TERMINATION FROM EMPLOYMENT

52.    All of the above paragraphs are incorporated into Count III by reference.

53.    In violation of the RA and the ADA, SVH intentionally discriminated against Dr. Rhoads because of his disability by terminating his employment on October 13, 2021.

54.    As a result of SVH's intentionally discriminatory termination of Dr. Rhoads' employment, Dr. Rhoads has suffered damages in the form of loss of past and future compensation and benefits, emotional distress, mental anguish, and loss of enjoyment of life.

55.    By intentionally discriminating against Dr. Rhoads, SVH acted with malice or with reckless indifference to Dr. Rhoads' federally protected rights. Therefore, SVH is liable for punitive damages under the ADA.

WHEREFORE, Dr. Rhoads prays for judgment against SVH in excess of $1,000,000.00, consisting of loss of past and future compensation and benefits, emotional distress, mental anguish, loss of enjoyment of life, punitive damages, attorney

fees, litigation expenses, prejudgment interest, and such other relief the court deems just and proper.

### IV:  BREACH OF CONTRACT

56.    All of the above paragraphs are incorporated into Court IV by reference.

57.    Effective October 1, 2019, Dr. Rhoads and SVH entered into a valid Employment Agreement.  Under the terms of this Employment Agreement, SVH agreed that if Dr. Rhoads became disabled, "SVH will explore all reasonable accommodations, including possible reassignment."

58.    SVH materially breached the Employment Agreement by failing to explore all reasonable accommodations, including possible reassignment, after Dr. Rhoads became disabled.  Specifically, SVH failed to explore reassignment of Dr. Rhoads to either:  (a) an administrative position which would not require direct patient care; or (b) a position as a provider of outpatient/primary care.  In addition, SVH also materially breached the Employment Agreement by terminating Dr. Rhoads' employment on October 13, 2021.

59.    As a result of SVH's breach of the Employment Agreement, Dr. Rhoads has suffered damages in the form of loss of past and future compensation and benefits.

WHEREFORE, Dr. Rhoads prays for judgment against SVH in excess of $1,000,000.00, consisting of loss of past and future compensation and benefits, prejudgment interest, and such other relief the court deems just and proper.

### REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff requests that Topeka, Kansas, be designated as the place of trial in this case.

Respectfully Submitted,

.

BY:___s/Alan V. Johnson_____
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com
SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
785-357-0152 facsimile
Attorneys for Plaintiff